IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMERICAN STATE BANK, a Texas banking corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV-09-322-L ) |
| GEOFF VAN DE NIEUWEGIESSEN, an individual d/b/a Wild West Dairy, | ) ) ) ) |
| Defendant. | ) |

## **O R D E R**

Plaintiff loaned money to defendant to assist in his operation of a dairy farm. As security for the note, defendant executed an Agricultural Security Agreement, under which the bank was entitled to request appointment of a receiver upon default. Defendant has admitted executing the note and security agreement and also admits he is in default under the terms of the note.  Plaintiff filed this action on March 25, 2009, seeking judgment on the amount owed, appointment of a receiver, and sale of the collateral, which consists mainly of dairy cattle and farm equipment.  On April 21, 2009, the court issued orders appointing L. Win Holbrook receiver and authorizing an immediate sale of the collateral.

On June 1, 2009, the receiver began liquidating the cattle.  He sold 1509 head of cattle at private sale to three separate buyers for a total sale price of $1,107,450.44, resulting in an average price of $733.90.  He also sold 23 heifers and

baby bulls through a sale barn, where they were sold for $4,212.73. After deducting commissions and other expenses, the net amount received was $1,055,666.90. The receiver has deposited $1,000,000.00 into an interest bearing account. On July 1, 2009, the receiver gave notice of his intent to sell equipment and other personal property at public auction on August 4, 2009. Shortly thereafter, defendant's mother, Anneke Van de Nieuwegiessen, moved to intervene to protect her interest in certain property. The court granted the motion to intervene on July 9, 2009.

This matter is before the court on three separate motions. First, the receiver moves for permission to disburse the cattle sales proceeds to plaintiff. Second, plaintiff seeks summary judgment on defendant's liability to it. Finally, the intervenor asks the court to determine that she is the owner of certain property and she is entitled to a portion of the proceeds from the sale of the dairy herd.[1] On September 23, 2009, the court held an evidentiary hearing on the motion for summary judgment and the intervenor's motion. Based on the evidence and argument presented at the hearing, the court makes the following findings.

As noted above, the receiver sold the dairy cattle at private sale and through a sale barn. He netted $1,055,666.90 and seeks an order directing disbursement of $1,000,000.00 plus accumulated interest to plaintiff. Intervenor objects, arguing that at least 215 head of the cattle and some of the equipment to be sold at auction

---

[1] Based on the intervenor's motion, the receiver withdrew the notice of sale of the equipment pending the court's ruling on the motion.

belong to her and not to defendant.[2]  Intervenor argues that no security interest attached to this property because it was actually owned by her, not defendant, and the bank did not give value to defendant.

The Agricultural Security Agreement signed by defendant pledged as collateral "ALL LIVESTOCK . . . NOW *OWNED* OR HEREAFTER ACQUIRED" and "ALL MACHINERY AND EQUIPMENT, NOW *OWNED* OR HEREAFTER ACQUIRED".  Exhibit 3 to Motion for Summary Judgment at 1 (emphasis added).  On first blush, this language would appear to require that defendant actually own the cattle and equipment before the security agreement could attach to them.  Article 9 of the Uniform Commercial Code, however, does not require actual ownership for a security interest to attach.  Once a security interest attaches to collateral, it is enforceable against a third party who asserts an interest.  A security interest attaches when the debtor has signed a security agreement describing the collateral, value has been given, and the debtor has "rights in the collateral or the power to transfer rights in the collateral to a secured party".  12A O.S. § 1-9-203(b)(2).  The Oklahoma Supreme Court has interpreted "rights in the collateral" to mean "possession of collateral pursuant to an agreement endowing him with any interest other than naked possession."  Morton Booth Co. v. Tiara Furniture, Inc., 564 P.2d 210, 214 (Okla. 1977).  In a case similar

---

[2]In her objection to the receiver's distribution of funds, intervenor sought compensation for cattle leased to defendant by intervenor in 2003.  *See* Exhibit A to Objection to Proposed Distribution of Funds.  At the hearing, however, the intervenor waived her claim to such cattle and instead sought only proceeds attributable to cattle purchased in 2008.

to the one at issue, the court found the following sufficient to give rise to "rights in the collateral":

> In the present case, the evidence is clear that Markuson's interests and authority over the fifty cattle significantly exceed the "naked possession" standard as stated in *Kenetics*. Plaintiff and Markuson entered into an oral agreement whereby plaintiff was to advance the price of the cattle and Markuson was to select, purchase, feed, shelter and sell the cattle at a profit, at which time the purchase price and one-half the profit was to be returned to plaintiff. Although apparently approval was needed on the purchase, plaintiff never saw the cattle before they were purchased. Evidence also indicates that Markuson was given complete discretion on the sale of the cattle, as plaintiff was out of the state at the time. . . . The cattle in controversy were kept on Markuson's ranch. Although they were initially kept separate from Markuson's herd, there was no agreement that the cattle not be commingled. . . . At no time did plaintiff call attention to any objection, or assert his interest in the cattle to any third party. The first time FmHA had knowledge of plaintiff's interest was after the sale. Since the cattle acquired by Markuson fit the description of the cattle under the security agreements, FmHA had no reason to know of any outside interest in the collateral.

Brown v. United States, 622 F. Supp. 1047, 1050-51 (D.S.D 1985).

In the present case, defendant possessed the cattle and equipment at issue and held himself out as the owner thereof. Intervenor did not notify the bank of her interest in the property until after the sale of the majority of the cattle. The cattle and equipment were used by defendant at his dairy operation, and defendant made all decisions regarding the use, sale, and management of the cattle and equipment. Defendant consistently represented to plaintiff both orally and in writing that he was

the sole owner of the cattle and equipment. *See, e.g.*, Plaintiff's Hearing Exhibit A. The evidence shows that intervenor had no input on the selection of cattle that was allegedly bought with her money.[3] Deposition of Anneke Van de Nieuwegiessen at 32. Furthermore, no attempt was made to segregate intervenor's cattle from defendant's herd. Id. at 32-33. Defendant thus had sufficient rights in the collateral for the security interest to attach. The court also finds that plaintiff gave value in September 2008 when it renewed the note, and the September 2008 Agricultural Security Agreement clearly described the collateral.

At best, intervenor has demonstrated that she invested in her son's dairy. It is undisputed that she did not give any notice to the bank of her claimed interest in the collateral until after the sale of the cattle, nor did she file any financing statements reflecting her interests. Given that plaintiff's security interest attached to the cattle and equipment at issue, any rights the intervenor has are subordinate to those of the bank. She is, thus, not entitled to any recovery. The court therefore denies Intervenor's Motion to Determine Ownership of Property and Proceeds and the Turnover Thereof[4] and grants Receiver's Motion for Permission to Disburse Cattle Sale Proceeds to Secured Creditor.

---

[3]Intervenor testified at the hearing that she wire transferred money to an account in her name and that that money was then transferred to her son's account so he could purchase the cattle in question. The bills of sale for the cattle all reflect that they were sold to intervenor's son; none indicate that the sales were on behalf of intervenor.

[4]The court denies plaintiff's request for costs and fees associated with responding to the intervenor's motion.

The court likewise grants plaintiff's motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In its motion, plaintiff seeks an order declaring defendant is indebted to it in the amount of $2,019,922.98 as of June 12, 2009, together with interest accruing at 18 percent until the date of judgment and at the judgment rate thereafter. In addition to a deficiency judgment against defendant, plaintiff also seeks its costs and attorney's fees. In his response, defendant does not dispute that he executed the note and Agricultural Security Agreement and that he is in default on the note. He nonetheless contends that plaintiff is not entitled to a deficiency judgment because the sale of the collateral was not commercially reasonable.

The burden of proof is on the secured party seeking a deficiency judgment to show the sale of collateral was conducted in a commercially reasonable manner. Grumman Credit Corp. v. Rivair Flying Serv., Inc., 845 P.2d 182, 185 (Okla. 1992).

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner . . . .

Id. (*quoting* 12A O.S. § 9-507(2). Defendant argues the sale of cattle in this case was not commercially reasonable because it was not conducted by public auction.

Based on the evidence presented at the hearing, the court finds the sale of the cattle was commercially reasonable. Based on the nature of the collateral and timing constraints, it was reasonable to sell the herd by private treaty. Due to their need to be milked twice a day, dairy cattle, unlike beef cattle, cannot simply be moved to an auction site to await sale. Furthermore, sufficient time did not exist to schedule a public auction. The farm on which the herd was located had been sold, and the receiver had to vacate the premises. In addition, the cattle received tests that were needed before they could be sold in May 2009. Those test results were only valid for thirty days; to sell the cattle after that date would have entailed additional expense to the estate. The receiver was also notified by the Oklahoma Department of Environmental Quality that the dairy operation was subject to suspension if it did not comply with state environmental regulations. The receiver employed professionals to conduct the private sales, and more than ten buyers inspected the herd. The receiver accepted the highest bids from various purchasers for the cattle. Furthermore, no evidence was presented that a public auction would have generated more proceeds, and it is undisputed that such an auction would have entailed greater costs to the estate. The court finds plaintiff has established the commercial reasonableness of the sale and therefore is entitled to summary judgment in its favor.

In sum, the court GRANTS Receiver's Motion for Permission to Disburse Cattle Sale Proceeds to Secured Creditor (Doc. No. 30) and Plaintiff's Motion for

Summary Judgment (Doc. No. 31). The court DENIES Intervenor's Motion to Determine Ownership of Property and Proceeds and the Turnover Thereof (Doc. No. 31). The receiver is directed to disburse the sum of $1,000,000.00, together with all interest accrued, to plaintiff. The receiver is also directed to sell the equipment and other personal property at public auction and to report to the court once he has done so. Judgment as to the amount of any deficiency owed by defendant will be entered once the receiver's final accounting has been filed.

It is so ordered this 24th day of September, 2009.

*Tim Leonard*
TIM LEONARD
United States District Judge